# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH McKENZIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 10-cv-1138 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

August 25, 2011

### I. INTRODUCTION

Kenneth McKenzie ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), for judicial review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") which denied his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381 - 1383f ("Act").

### II. PROCEDURAL HISTORY

In July 2007, Plaintiff filed an application for DIB and a separate application for SSI. In both applications he claimed an inability to work due to disability beginning August 28, 2002. (R. at 110 – 21)[1]. Both claims were denied at the initial level of administrative review and,

---

[1] Citations to ECF Nos. 5 – 5-9, the Record, *hereinafter*, "R. at __."

thereafter, Plaintiff filed a timely request for review. An administrative hearing was held on August 26, 2009, before Administrative Law Judge Alma S. DeLeon ("ALJ"). Plaintiff was represented by counsel and testified at the hearing. William H. Reed, Ph.D., an impartial vocational expert ("VE") also testified at the hearing. (R. at 21).

On October 13, 2009, the ALJ rendered an unfavorable decision to Plaintiff in which she found that Plaintiff had the residual functional capacity to perform light work with restrictions,[2] and therefore was not disabled as defined in the Act. The ALJ's decision became the final decision of the Commissioner on July 10, 2010, when the Appeals Council denied Plaintiff's request for review.

On September 2, 2010, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the ALJ's decision. The parties have filed cross-motions for summary judgment. Plaintiff contends that the ALJ erred when she found that Plaintiff had the residual functional capacity to perform work at the light exertional level, with restrictions. The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence. For the reasons that follow, the Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

### III. STATEMENT OF THE CASE

<u>General Background</u>

Plaintiff was born June 27, 1959, and was fifty years of age at the time of his administrative hearing. (R. at 27). Plaintiff was six feet, four inches tall, and weighed two

---

[2] Specifically, the ALJ found that Plaintiff could perform light work limited by the following: to lift and carry no more than 20 pounds, to push and pull in his lower extremities; to make complex decisions; to follow detailed instructions; to be exposed to heights; and to be exposed to moving machinery. (R. at 14).

hundred eighty two pounds. (R. at 29). Plaintiff has a twelfth grade education. He resided in the home of his deceased aunt. (R. at 28).

Plaintiff has past relevant work as a furniture handler and hotel housekeeper and laundry room worker, which are considered unskilled and very heavy and medium exertion. In 2002, Plaintiff was laid off from his most recent job and he has not worked since that time. (R. at 34). He subsists on public welfare and food stamps and has a state medical insurance card. (R. at 34 – 35).

A. <u>Medical History</u>

Plaintiff's medical history reflects that he was treated at Aliquippa Community Hospital, in Aliquippa, Pennsylvania, between November 2002 and August 2008 for various complaints, including neck and back pain that he sustained as a result of a motor vehicle accident in 2003, elbow and knee pain, and cardiovascular complaints, as well as diabetes mellitus and hypertension.

Imaging studies of Plaintiff's heart in November of 2002 revealed relatively normal heart functioning, with an ejection fraction of fifty three percent. (R. at 235). A stress test in the same time period revealed normal blood pressure and heart rate response, and fair functional reserve. (R. at 237). A later examination of Plaintiff in February of 2007 at Sewickley Valley Hospital, in Sewickley, Pennsylvania, was also normal. (R. at 248).

Following his car accident in November 2003, imaging studies of Plaintiff's head, neck, and spine were conducted which revealed no abnormalities. (R. at 217 – 18, 225). Imaging of the lumbar spine in May and July of 2009 also yielded normal results. (R. at 456, 459 – 60). In March of 2004, an imaging study of Plaintiff's right elbow was conducted. (R. at 216). Plaintiff complained of right elbow pain and swelling following a basketball game. (R. at 216). Imaging

showed only a bony contusion. (R. at 216). Plaintiff received an x-ray of his right knee following a fall on ice in December of 2004. (R. at 215). The image showed no evidence of fracture and very mild degenerative changes in the knee joint. (R. at 215).

From 2003 through 2009, Plaintiff was treated for his diabetes and hypertension by Gerald M. Goltz, M.D., an endocrinologist. Dr. Goltz noted that Plaintiff checked his blood sugar once or twice per day, although Plaintiff once admitted to checking his levels only occasionally, resulting in blood sugar levels that were "out of whack." (R. at 251 – 311, 419 – 45). Blood sugar levels ranged from the 120's to the 400's during Plaintiff's course of treatment with Dr. Goltz. (R. at 251 – 311, 419 – 45). Dr. Goltz diagnosed Plaintiff with type II diabetes, hypertension, dyslipidemia, and metabolic syndrome. (R. at 251 – 311, 419 – 45). Plaintiff was regularly prescribed medication for management of these conditions. (R. at 251 – 311, 419 – 45). By January of 2005, Dr. Goltz indicated that Plaintiff's diabetes was better controlled and that his blood pressure levels were within an acceptable range. (R. at 251 – 311, 419 – 45). In August of 2008, Dr. Goltz again indicated that Plaintiff's glycemic balance was relatively improved. (R. at 251 – 311, 419 – 45).

K. Narayan Shetty, M.D. , was Plaintiff's primary care physician from 2002 through 2009. (R. at 313 – 58, 446 – 66). During this time, Plaintiff's blood sugar levels ranged from 72 – 348. (R. at 313 – 58, 446 – 66). Physical examinations during his treatment with Dr. Shetty were largely normal. (R. at 313 – 58, 446 – 66). An echocardiograph of Plaintiff's heart by Dr. Shetty in 2003 revealed relatively normal heart function and an ejection fraction of sixty one percent. (R. at 313 – 58, 446 – 66). A nerve conduction study conducted in February of 2007 to determine the presence of diabetic peripheral neuropathy was negative; however, there was neurological abnormality noted. (R. at 313 – 58, 446 – 66). A stress test administered by Dr.

Shetty in February of 2007 indicated poor functional reserve and inappropriate heart response, but Plaintiff's blood pressure was normal. (R. at 313 – 58, 446 – 66). Programmed exercise was thereafter recommended to improve Plaintiff's health. (R. at 313 – 58, 446 – 66). A later stress test in October of 2008 showed a fair functional reserve and a normal heart rate response, but an inappropriate blood pressure response. (R. at 313 – 58, 446 – 66).

On August 31, 2009, Dr. Shetty completed a Medical Source Statement of Claimant's Ability to Perform Work-Related Activities. (R. at 468 – 69). Dr. Shetty noted that Plaintiff could not lift any weight frequently, could only occasionally lift and carry up to twenty pounds, could stand and walk one to two hours of an eight hour work day, sit less than six hours, occasionally bend, kneel, stoop, crouch, balance, and climb, and had limited eyesight. (R. at 468 – 69).

B. Functional Assessments

On October 23, 2007, Andrew K. Cole, M.D., examined Plaintiff on behalf of the Bureau of Disability Determination. (R. at 359 – 68). Dr. Cole determined that Plaintiff suffered from diabetes and carpal tunnel syndrome. (R. at 359 – 68). Dr. Cole considered Plaintiff's diabetes to be uncontrolled, and noted that he suffered poor vision, body aches, and peripheral neuropathy as a result. (R. at 359 – 68). He also found that Plaintiff experienced difficulty with pain, numbness, and tingling in the right hand due to carpal tunnel syndrome. (R. at 359 – 68). During a physical examination, Dr. Cole observed the Plaintiff had a normal gait, but was unsteady on his heels and toes, and was able to get on and off of the exam table without difficulty. (R. at 359 – 68). Dr. Cole noted that Plaintiff was somewhat obese; showed no signs of muscle atrophy; and had muscle strength of 5/5 bilaterally. (R. at 359 – 68). Motor and sensory functions were intact, with reflexes brisk and equal on both sides. (R. at 359 – 68).

5

Dr. Cole noted that Plaintiff exhibited limited flexion, extension, and range of motion in his knees and hips, but significant limitation in his wrist. (R. at 359 – 68). Dr. Cole indicated that Plaintiff could not lift any weight frequently, could only occasionally lift and carry up to twenty pounds, could stand and walk less than six hours of an eight hour work day, could sit one to two hours, could only occasionally bend, kneel, stoop, crouch, balance, and climb, and would experience limitation in handling, fingering, and seeing. (R. at 359 – 68).

On December 14, 2007, Dilip S. Kar, M.D., a state agency physician, reviewed the record and completed an assessment of Plaintiff's residual functional capacity ("RFC"). (R. at 369 – 75). Based on the medical record evidence, Dr. Kar opined that Plaintiff was capable of occasionally lifting twenty pounds, frequently lifting ten pounds, standing and walking six hours of an eight hour workday, and sitting six hours. (R. at 369 – 75). Dr. Kar found that Plaintiff was not otherwise limited. (R. at 369 – 75). Dr. Kar explained that his findings were based upon Plaintiff's reported daily activities which were not significantly limited relative to Plaintiff's alleged symptoms, his ability to paint, his ongoing physical therapy, his ability to walk without an assistive device, and his apparent ability to cope without prescribed pain medication. (R. at 369 – 75). Dr. Kar further concluded that the findings of Dr. Cole were largely unsupported by record evidence and were primarily based upon Plaintiff's subjective complaints. (R. at 369 – 75). Dr. Cole's observations were considered to be an overestimation of Plaintiff's limitations. (R. at 369 – 75).

C. <u>Administrative Hearing</u>

Plaintiff described suffering from type II diabetes which requires regular administration of insulin for control of blood sugar levels. (R. at 30). Plaintiff attributed leg pain, tingling and numbness, liver problems, and carpal tunnel in his hands, to his diabetes. (R. at 30, 48).

6

Plaintiff testified that his pain was significant and that he took prescription medication for relief. (R. at 48). Plaintiff stated that dealing with his diabetes had been difficult for him. (R. at 33). He explained that, according to his physicians, his diabetes would not likely improve in the future. (R. at 46). He declined to characterize his diabetes as "controlled," because he attested to frequent spikes in his blood sugar levels. (R. at 46). Plaintiff has not been hospitalized for diabetes-related illness/health conditions since 2006. (R. at 46).

Plaintiff also testified that his doctors recommended that he avoid straining/stressful situations and that he diet and exercise to lose weight. (R. at 47). Plaintiff reported that he was largely unsuccessful to this end, because he tired easily and became out of breath when exercising. (R. at 47). He believed that if it were not for his diabetes and related symptoms, and his medications, he would be able to work. (R. at 43). Plaintiff expressed a desire to work, but did not feel that he could. (R. at 43).

Plaintiff testified that he spent much of his day sitting and lying down. (R. at 41, 51 – 52). According to Plaintiff, he can only stand one to two hours and cannot sit for more than half of an hour. (R. at 50). Plaintiff lives independently and, on a regular basis, Plaintiff is able to clean his residence including: washing dishes, mopping/sweeping/vacuuming the floors, cleaning the bathroom, making his bed, and taking out the trash. (R. at 37). He also cooks for himself and goes to the to the grocery store once a month. (R. at 37, 39).

Plaintiff testified that he was able to lift thirty to forty pounds without difficulty, and occasionally lift forty to fifty pounds. (R. at 49). He attends church regularly. (R. at 39 – 40). Plaintiff reported his past hobbies had included fishing and painting, but testified that he only occasionally now goes fishing and seldom paints. (R. at 38 – 39). He also reported that he does not visit his friends as often as he once had. (R. at 40).

Plaintiff does not have a driver's license and does not drive. He complained that he had difficulty sleeping through the night. (R. at 40 – 41). He typically went to bed between 11:00 and 11:30 p.m., and usually arose between 7:00 and 8:00 a.m. (R. at 40 – 41). Due to his poor sleep, Plaintiff testified that he took two naps twice a day for up to two hours at a time. (R. at 41).

Following Plaintiff's testimony, the ALJ asked the vocational expert whether a significant number of jobs in the national economy would be available to a hypothetical individual of Plaintiff's age, educational background, and work experience, but limited to light exertional work requiring lifting and carrying no more than twenty pounds, not requiring complex decision-making, detailed instruction, moving machinery, or exposure to heights, and involving only limited pushing and pulling with the upper and lower extremities. (R. at 54).

The vocational expert replied that such a person would be capable of engaging in work as an "unskilled cashier," with 850,000 jobs available in the national economy, as an "usher," or "ticket taker," with 33,000 jobs available, or as an "unskilled security guard," with 750,000 jobs available. (R. at 54 – 55). Plaintiff's attorney inquired whether the availability of said positions would change if the hypothetical person would be off-task for up to two hours a day. (R. at 56). The vocational expert stated that no work would be available to such a person. (R. at 56). Plaintiff's attorney then asked whether work would be available to the hypothetical person if he or she would be absent from work at least two days per month on an ongoing basis. (R. at 56). The vocational expired replied that no jobs would be available to such a person. (R. at 56). Finally, Plaintiff's attorney asked whether the hypothetical person would be capable of working if he or she could stand and walk less than six hours per day, and could sit no more than two

hours per day. (R. at 57). The vocational expert responded that no full-time work would be available to such a person. (R. at 57).

**IV.     STANDARD OF REVIEW**

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g)/1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Capato v. Commissioner of Social Security*, 631 F.3d 626, 628 (3d Cir. 2010) (internal citation omitted). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Commissioner of Social Security*, 625 F.3d 798 (3d Cir. 2010).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Newell v. Commissioner of Social Security*, 347 F.3d 541, 545-46 (3d Cir. 2003) (*quoting Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in

9

any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter,* 247 F.2d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

(1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell,* 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell,* 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Newell,* 347 F.3d at 545-46; *Jones,* 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford,* 399 F.3d at 551; *Newell,* 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine

whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Commissioner of Social Security*, 577 F.2d 500, 502 (3d Cir. 2010); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process. In making this determination, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work, with certain limitations.

## V. DISCUSSION

In essence, Plaintiff's sole argument is that even if Plaintiff were capable of performing light exertional work, the opinions of Drs. Shetty and Cole demonstrate that Plaintiff cannot perform light work for eight hours per day.

In her decision, the ALJ specifically considered these opinions and found that they both appeared to be an overestimate of Plaintiff's limitations. Dr. Shetty provided no medical findings or explanation to support his September 2008 opinion that Plaintiff was limited to working less than eight hours per day and Dr. Shetty stated that his finding was based on pure speculation.

In order to be entitled to controlling weight, a treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and must not be "inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Case law is clear that an ALJ is entitled to disregard the opinions of a treating

11

physician which are conclusory, unsupported by the medical evidence, or internally inconsistent. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Both Dr. Shetty and Dr. Cole performed a physical examination of Plaintiff and completed medical source statements of Plaintiff's ability to perform work related physical activities. The ALJ found that the physical assessments of Drs. Shetty and Cole produced essentially unremarkable findings and that while the assessments showed severe symptoms and limitations, the ALJ found that such symptoms and limitations were properly accommodated for in the RFC determination.

Unlike the opinions of Drs. Shetty and Cole, the ALJ found that the opinion of Dr. Kar was supported by the medical evidence of record. For example, Dr. Kar found that Dr. Cole's report was an overestimate of the severity of Plaintiff's limitations as Dr. Cole had relied heavily upon Plaintiff's self-reported symptoms and limitations and that the totality of the medical evidence did not support those subjective complaints.

The ALJ also considered Plaintiff's subjective complaints of disabling limitations and found that such limitations did not rule out light work. Further, the ALJ found that any limitations appeared to be manageable with medications and appropriate medical treatment.

The ALJ also noted that Plaintiff's attorney had propounded questions to the VE that contained additional limitations to Plaintiff's capacity for work. However, the ALJ specifically found that these limitations were not consistent with the medical evidence of record and, thus, rejected the questions and answers.

For all these reasons, the Court finds that the determination of the ALJ is supported by substantial evidence and that the residual functioning capacity assessment adopted by the ALJ adequately reflects Plaintiff's credibly established limitations.

## VI.  CONCLUSION

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment.  Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and her conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that he is able to perform a light exertional work, with limitations.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH McKENZIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 02: 10-cv-1138 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER OF COURT

**AND NOW**, this 25th day of August, 2011, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment filed by Plaintiff, Kenneth McKenzie, (Document No. 7) is DENIED.

2. The Motion for Summary Judgment filed by Defendant, Michael J. Astrue, Commissioner of Social Security (Document No. 9) is GRANTED.

3. The Clerk will docket this case as closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Judge

cc: Stanley E. Hilton, Esquire
Email: GO2166@aol.com

Albert Schollaert,
Assistant U.S. Attorney
Email: albert.schollaert@usdoj.gov